IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. |
| | 5:21-cr-00043-TES-CHW |
| DEMETRIS HILL, | |
| *Defendant*. | |

## ORDER DENYING DEFENDANT'S MOTION FOR ACQUITTAL, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

Before the Court is Defendant Demetris Hill's Motion for Acquittal, or in the alternative, Motion for a New Trial [Doc. 74].

## BACKGROUND

On July 8, 2021, the Government obtained an indictment charging Defendant with 60 counts of Theft of Government Money in violation of 18 U.S.C. § 641. [Doc. 1]. Defendant entered a plea of not guilty on July 27, 2021. [Doc. 10]. On September 13, 2022, the Government obtained a superseding indictment that charged Defendant with one count of Theft of Government Property;[1] one count of False Claims Against the Government;[2] and one count of Wire Fraud.[3] On September 28, 2022, Defendant again

---

[1] 18 U.S.C. § 641.

[2] 18 U.S.C. § 287.

[3] 18 U.S.C. § 1343.

plead not guilty. [Doc. 54]. On October 17 and 18, 2022, the Court held a jury trial as to the superseding indictment. [Doc. 63]; [Doc. 64].

At trial, the Government presented evidence showing Defendant began receiving disability benefits from the Railroad Retirement Board ("RRB") in 2012. [Doc. 69-1, p. 1]. Defendant received around $2,800.00 each month. [Doc. 44, p. 5]. When he began receiving those benefits, Defendant acknowledged that the RRB required him to report any changes in his employment status, including any ownership in a family-owned business. [Doc. 69-2, p. 5].

Evidence also showed that Defendant became involved in SparClean Premier Cleaning Solutions ("SparClean") by at least August 2016. [Doc. 44, p. 4]. Indeed, the Georgia Secretary of State's business records showed Defendant as the general partner beginning on August 14, 2013. [Doc. 70-6, p. 3]. Again, in October 2014, Defendant signed and filed articles of organization, listing himself as a manager of SparClean. [Doc. 70-6, p. 6–7]. The Government also presented evidence that Defendant signed numerous bank documents on behalf of SparClean. [Doc. 73-1]; [Doc. 72-2]; [Doc. 72-3]: [Doc. 72-4]; [Doc. 72-5]. The Government also entered emails between Defendant and clients of SparClean. [Doc. 73-2]; [Doc. 73-3]; [Doc. 73-4].

All the while, trial testimony and evidence showed that Defendant never informed the RRB of his affiliation with SparClean, despite numerous reminders of his obligations to report new employment or changes in eligibility status. [Doc. 69-5]; [Doc.

70-1]; [Doc. 70-2]; [Doc. 70-3]; [Doc. 70-4]. This evidence included a review of the RRB's phone logs, and witnesses who testified that the RRB never recorded a conversation with Defendant regarding his employment with SparClean. [Doc. 70-5].

At the close of the Government's evidence, Defendant orally moved for a judgment of acquittal. [Doc. 78, Trial Tr., pp. 44:6—58:16]. The Court deferred ruling on the motion and allowed the case to proceed. [*Id.* at pp. 58:17—59:8]. Defendant then presented one witness—his ex-wife, Kameo Hill. [*Id.* at pp. 63:21—112:19]. Defendant's theory circled around his continued eligibility based on his disability and his hands-off involvement with SparClean. Ms. Hill testified that Defendant only became involved to help her start the business because of license issues she faced. Defendant's continued involvement, Ms. Hill testified, could be attributed to his desire to help his then-wife's business succeed. Additionally, Ms. Hill testified that she and Defendant did tell the RRB, but the RRB employees they discussed it with just didn't record it. [Doc. 78, Tr. Trans., p. 81:2–11].

On October 19, 2022, the jury returned guilty verdicts as to count one—Theft of Government Property—and count two—False Claims Against the Government. [Doc. 67]. The jury returned a verdict of not guilty as to count three—Wire Fraud. [*Id.*]. On November 2, 2022, Defendant filed the instant Motion. [Doc. 74].

## LEGAL STANDARD

On a motion for the entry of a judgment of acquittal, a "district court must view

the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006). In making its decision, the jury is free to "choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, and the court must accept all reasonable inferences and credibility determinations made by the jury." *United States v. Sellers*, 871 F.2d 1019, 1021 (11th Cir. 1989). A "jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011).

Conversely, on a motion for new trial, the Court "need not view the evidence in the light most favorable to the verdict." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). Instead, the Court may "weigh the evidence and consider the credibility of witnesses." *Id.* Indeed, if the Court concludes that, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates heavily against the verdict that a serious miscarriage of justice may have occurred," the Court may "set aside the verdict, grant a new trial, and submit the issues . . . [to] another jury." *Id.*

## DISCUSSION

### I.      Motion for Acquittal

#### a.      Count One—Theft of Government Property

Defendant first challenges the sufficiency of the evidence of count one, for which the jury convicted Defendant of Theft of Government Property.[4] First, Defendant argues that "[t]here was no evidence presented at trial that [he] stole money from the Railroad Retirement Board." [Doc. 74, p. 5]. Instead, Defendant asserts that he was entitled to the money all along because the RRB's medical team "decided he was entitled to receive" the funds "when they ruled he had a full and permanent disability." [*Id.*]. Defendant hedges his bets on the argument that the RRB neither stopped giving him the money nor changed his eligibility. But that misses what the evidence at trial showed—the RRB couldn't change his eligibility based on his work with SparClean because the Defendant didn't tell them about as required. Namely, the Government argued that if Defendant informed the RRB, he wouldn't have been eligible and then wouldn't have received the benefits. But the RRB never made that determination because Defendant never disclosed what he was mandated to disclose. [Doc. 78, Trial Tr., p. 148:4–9].

---

[4] The Court instructed the jury on count one that the Government must prove:

(1) the money or property described in the indictment belonged to the United States; (2) the Defendant stole the money or property to his own use or to someone else's use; (3) the Defendant knowingly and willfully intended to deprive the United States of the use or benefit of the money or property; and (4) the money or property had a value greater than $1,000.

[Doc. 66, p. 7].

Instead, he continued to receive benefits that he knew were subject to at least eligibility review based on his affiliation with SparClean. At best, the RRB would have reviewed Defendant's association with SparClean and determined he was eligible. At worst, the RRB would have stopped Defendant's payments because he was no longer eligible. The former would maintain the argument that Defendant presents—that the RRB knew all of the information and still decided Defendant was eligible. The Government's theory was the latter, though—that Defendant knew it was likely the RRB wouldn't continue his payments because of his association with SparClean, so he didn't tell the RRB about SparClean—he continued to work all the while claiming he was disabled. [*Id.* at p. 149:7–19]. Based on the evidence presented, the jury believed the Government's theory that he effectively stole RRB disability benefits beyond a reasonable doubt. The Court easily agrees and finds that sufficient evidence clearly supports that verdict.

Defendant argues that because his eligibility never changed, he couldn't have stolen the money. [*Id.* at p. 129:1–8]. Essentially, this equates to a good-faith defense. Defendant proposed, and the Court instructed the jury on such a defense.[5] However,

---

[5] The Court's instruction read:

> "Good faith" is a complete defense to a charge that requires intent to defraud. A defendant isn't required to prove good faith. The Government must prove intent to defraud beyond a reasonable doubt. An honestly held opinion or an honestly formed belief cannot be fraudulent intent—even if the opinion or belief is mistaken. Similarly, evidence of a mistake in judgment, an error in management, or carelessness can't establish fraudulent intent.

[Doc. 66, p. 11].

the Government presented sufficient evidence to overcome Defendant's good-faith

defense beyond a reasonable doubt. Namely, the Government showed that he knew, or

should have known, that his eligibility hinged on his open and transparent

communication with the RRB. Defendant also received annual reminders to report any

employment, and his initial application listed those responsibilities, as well. [Doc. 69-2];

[Doc. 69-5]; [Doc. 70-1]; [Doc. 70-2]; [Doc. 70-3]; [Doc. 70-4]. That gave the jury sufficient

evidence to infer Defendant's intent and defeat his good-faith defense. *See United States*

*v. Townsend*, 515 F. App'x 869, 872 (11th Cir. 2013) (affirming a defendant's conviction

for theft of government property based on her failure to update the Social Security

Administration regarding her employment).

Defendant also argues that the jury's verdict presented inconsistent results. [Doc.

74, p. 4]. Because the jury acquitted Defendant on count three—wire fraud—he argues

that the jury should have also acquitted on count one—theft of government property.

[*Id.* at pp. 4–5]. However, "consistency in the verdict is not necessary." *United States v.*

*Powell*, 469 U.S. 57, 62 (1984) (internal citations omitted). Indeed, a jury may reach its

decision through "mistake, compromise, or lenity," and that is not to be disturbed

simply because of alleged inconsistency. *United States v. Mitchell*, 146 F.3d 1338, 1345

(11th Cir. 1998); *see also United States v. Green*, 981 F.3d 945 (11th Cir. 2020). Therefore,

any argument based on inconsistency is insufficient to warrant the requested relief.

In sum, "[b]ecause the evidence need not exclude every possible reasonable

hypotheses of [Defendant's] guilt and need only be such that a reasonable jury could find [him] guilty beyond a reasonable doubt, the evidence was sufficient to show that [Defendant] received benefits to which she was not entitled." *Townsend*, 515 F. App'x at 872.

### b.  Count II—False Claims Against the Government

Similarly, Defendant argues that there was insufficient evidence to show that he presented a false claim to the government. To be sure, Defendant argues there is "zero evidence [he] *presented* a false claim." [Doc. 74, p. 7 (emphasis in original)]. Defendant's argument centers around the jury charge[6] which required a "presentation of a materially false fact." [*Id.*]. However, like count one, the Government presented

---

[6] The Court's charge on count two read:

> Count Two charges Defendant with False Claims Against the Government.
> It's a Federal crime to knowingly make a false claim against any department or agency of the United States.
> The Railroad Retirement Board is a department or agency of the United States.
> The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>> (1) the Defendant knowingly presented a false claim against the United States to an agency of the United States;
>> (2) the claim was based on a false or fraudulent material fact; and
>> (3) the Defendant acted intentionally and knew that the claim was false and fraudulent.
> A claim is "false" or "fraudulent" if it is untrue when made or presented and the person making or presenting it knows it is untrue. But the Government doesn't have to show that the Governmental department or agency was in fact deceived or misled.
> It's not a crime to make a false claim unless the falsity or fraudulent aspect relates to a material fact. A misrepresentation is "material" if it contains a "material fact" that is false. A "material fact" is an important fact – not some unimportant or trivial detail – that has a natural tendency to influence or is capable of influencing a department or agency in reaching a required decision.

[Doc. 66, pp. 6–7].

sufficient evidence for the jury to reach its verdict.

Primarily, the jury saw documentation of numerous direct deposit/financial transfers that Defendant received from the RRB. [Doc. 71-3]; [Doc. 71-4]; [Doc. 71-5]; [Doc. 71-6]; [Doc. 71-7]. The jury also heard evidence that tended to show that Defendant never informed the RRB of his affiliation with SparClean or to stop the payments. [Doc. 77, Trial Tr., pp. 64:22—65:3]. Instead, he did the 21st-century version of endorsing a check—he saw the direct deposits come into his account each month, said nothing to the Government about it and spent that money.

Precedent is clear that a false claim against the government can be as simple as endorsing a check for which you are not entitled. *See United States v. Rich*, 752 F. App'x 958 (11th Cir. 2019). Although not binding, the Government's Response [Doc. 79] references convincing case law from the Fourth Circuit, which concludes that "a false claim against the government can be made without making a false statement[.]" *United States v. Allen*, 13 F.3d 105, 108 (4th Cir. 1993); [Doc. 79, pp. 16–17]. Indeed, knowing that there is money in your account to which you know you are not entitled and then later using those funds is "something the jury could consider in determining intent to defraud." *United States v. Pointon*, 590 F. App'x 920, 924 (11th Cir. 2014); *see also United States v. Louis*, 602 F. App'x 728, 730 (11th Cir. 2015) (holding that use of fraudulently acquired money can be used to infer intent). Therefore, every time Defendant received his direct deposit from the RRB, he knew that his SparClean employment would likely

impact his eligibility, yet he kept and spent the money anyway—that is a continuing

false claim, much like it would have been if he had received and endorsed physical

checks. Modern innovation and efficiency surely cannot allow a similar crime to go

unenforced simply because the government no longer uses physical checks to issue

benefits.

 Defendant acknowledges that he received the money each month and used it.

[Doc. 74, p. 5]. However, Defendant again conflates the jury's acquittal on count three—

wire fraud—with a finding that he "was not guilty of engaging in [fraudulent

conduct]." [*Id.*]. That is not necessarily true. Instead, the two counts are distinct and

involve different elements. *Compare* [Doc. 66, ¶ XI], *with* [Doc. 66, ¶ XII]. Again, as

outlined above, a jury's verdict may not be set aside because of a verdict's

inconsistency, **especially** when "the indictment charges different offenses requiring

different elements of proof." *United States v. Haynes*, 554 F.2d 231, 233 (5th Cir. 1977).[7]

Regardless, the Court need not attempt to guess the jury's logic or decision-making

process to determine the path it followed to reach its verdict.

 The jury viewed the evidence and deduced that Defendant acted with the

requisite intent to defraud. After reviewing the evidence in the light most favorable to

---

[7] "[T]he decisions of the United States Court of Appeals for the Fifth Circuit (the 'former Fifth' or the 'old Fifth'), as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for [the court of appeals], the district courts, and the bankruptcy courts . . . ." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

the Government—as required for the instant Motion—the Court concludes there is more than sufficient evidence to support the verdict. *See Molina*, 443 F.3d at 828. It is not the Court's role to second-guess the jury's decision. *See United States v. Aletto*, 645 F. App'x 894, 896 (11th Cir. 2016).

Accordingly, the Court **DENIES** Defendant's Motion for Acquittal.

## II.   <u>Motion for New Trial</u>

Although raised as a distinct alternative motion, Defendant relies on the same insufficiency arguments in moving for a new trial. But "motions for a new trial based on the weight of the evidence are 'not favored' and are reserved for the 'really exceptional cases.'" *United States v. Gallardo*, 977 F.3d 1126, 1140 (11th Cir. 2020) (internal citations omitted). Explaining more, those exceptional cases only come around when "the evidence [preponderates] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* Indeed, Defendant doesn't argue that the Government's witnesses were impeached, or the evidence against him was "marked with such uncertainties or discrepancies that would undermine the confidence in the jury's verdict." *United States v. Bohn*, No. 20-10930, 2022 WL 2439586, at *4 (11th Cir. July 5, 2022).

To be sure, the Court concludes that the weight of the evidence supports the verdict that the jury reached—not the opposite, which would grant Defendant the relief he seeks. *United States v. Hernandez*, 433 F.3d 1328, 1330 (11th Cir. 2005). The Court also

heard the evidence and examined the witnesses' credibility. The weight of the evidence clearly weighs against letting another jury hear the case again. Defendant received a fair trial and that is what he is required to receive. Accordingly, Defendant's alternative Motion for New Trial is **DENIED**.

<u>CONCLUSION</u>

The ultimate disposition of this case comes down to credibility and applying law to facts. The jury heard the evidence, arguments, and the Court's instructions. The jury made its choice, and there is sufficient evidence to support the verdict it rendered. It is not the responsibility of the Court to second-guess credibility or evidentiary determinations. *See United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990). Accordingly, the Court **DENIES** Defendant's Motion for Acquittal, or in the Alternative, Motion for New Trial [Doc. 74].

**SO ORDERED**, this 22nd day of December, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**